## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| _____ ) | |
| Conservation Law Foundation, Inc., ) | |
| ) | Case No. _____ |
| Plaintiff, ) | |
| ) | **COMPLAINT FOR** |
| v. ) | **DECLARATORY AND INJUNCTIVE** |
| ) | **RELIEF AND CIVIL PENALTIES** |
| ) | |
| First Transit, Inc. ) | |
| ) | |
| Defendant. ) | (Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*) |
| _____ ) | |

## <u>INTRODUCTION</u>

1.      This is a citizen enforcement suit brought by Plaintiff, Conservation Law Foundation, Inc. ("Plaintiff" or "CLF"), on behalf of its individual members, to redress and prevent Clean Air Act violations that negatively affect the health and lives of Connecticut residents by repeatedly exposing them to harmful pollutants.

2.      Defendant First Transit, Inc. ("First Transit") owns, operates, and/or manages a fleet of vehicles that travel and are housed in and around the State of Connecticut.

3.      Defendant has repeatedly violated, is violating, and continues to violate the Clean Air Act ("CAA" or "Act") and the Connecticut State Implementation Plan ("SIP"), specifically, the Connecticut motor vehicle idling limits contained within the federally enforceable Connecticut SIP.

4.      Defendant has caused and/or allowed the operation of mobile sources when such mobile sources were not in motion in excess of the three-minute time period allowed by Regs. Conn. State Agencies § 22a-174-18(b)(3)(C), and not in accordance with any exceptions listed in Regs. Conn. State Agencies § 22a-174-18(b)(3)(C)(i) through (vii) or at § 22a-174-18(j).

1

5.     Defendant's buses unlawfully pollute communities they are meant to serve. During a few hours' observation on a sample of nine (9) days in November of 2019, September and October of 2020, October and November of 2021, and January of 2022, an investigator observed fifty-three (53) violations of federal air pollution laws by First Transit at the company's bus stops in Wethersfield, and New Haven, Connecticut.

6.     First Transit continues to violate the Clean Air Act and the Connecticut State Implementation Plan, even after receiving notification by CLF of the company's unlawful conduct and of CLF's intention to enforce the federal law through this citizen suit.

7.     Upon information and belief, First Transit has not taken any actions sufficient to prevent future violations of the type alleged in this Complaint.

8.     Absent an appropriate order from this Court, Defendant is likely to repeat its violations of the Act as described below.

9.     CLF asks the Court to remedy the ongoing harm and to order First Transit to comply with federal law by immediately curtailing unlawful idling, redressing its past violations, and implementing practices to prevent unlawful excess idling and the resultant exhaust pollution in the future.

10.     This action encompasses post-Complaint violations of the types alleged in the Complaint.

## LEGAL BACKGROUND

*The Citizen Suit Provision of the Clean Air Act*

11.     In 1970, Congress passed the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

12.     The Act directs the United States Environmental Protection Agency ("EPA") to set National Ambient Air Quality Standards ("NAAQS"). *General Motors Corp. v. United States*, 496 U.S. 530, 533 (1990) (citing 42 U.S.C. §§ 7409–10).

13.     The Act also directs each state or local air-pollution control agency to develop a State Implementation Plan ("SIP") describing how it will achieve and maintain compliance with the NAAQS set by EPA to protect human health and the environment. 42 U.S.C. § 7407(a).

14.     A standard or limitation established "under any applicable state implementation plan approved by the Administrator" qualifies as a federally enforceable "emission standard or limitation" under the Act. 42 U.S.C. § 7604(f)(4).

15.     In the "citizen suit" provision of the Act, Congress authorizes "any person" to "commence a civil action . . . against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of . . . an emission standard or limitation under" the Act. 42 U.S.C. § 7604(a)(1).

16.     The Act's definition of an "emission standard or limitation" includes any standard or limitation established "under any applicable State Implementation Plan approved by the Administrator." 42 U.S.C. §7604(f)(4).

17.     Accordingly, citizens may enforce standards or limitations established under any EPA-approved SIP in the federal courts. *See, e.g., Council of Commuter Orgs. v. Metro. Transp. Auth.*, 683 F.2d 663, 669 n.7 (2d Cir. 1982).

18.     Each separate violation of the Act, its emission standards, or limitations subjects the violator to a penalty of up to $101,439 per day per violation. 40 C.F.R. §§ 19.2(a), 19.4.

*The Anti-Idling Regulation*

19.     The State of Connecticut has an EPA-approved SIP that includes Regs. Conn. State Agencies § 22a-174-18(b)(3)(C) (the "Connecticut Anti-Idling Regulation").

20.     The Connecticut Anti-Idling Regulation provides that "no person shall cause or allow. . . a mobile source to operate for more than three (3) consecutive minutes when such mobile source is not in motion." 42 U.S.C. § 7410; 40 C.F.R. § 52.385; 79 Fed. Reg. 41,427.

21.     The Connecticut Anti-Idling Regulation creates limited exceptions to the general prohibition on idling in excess of three minutes for instances in which:

- The vehicle "is forced to remain motionless because of traffic conditions or mechanical difficulties over which the operator has no control," Regs. Conn. State Agencies § 22a-174-18(b)(3)(C);

- Idling in excess of three minutes "is necessary to operate defrosting, heating or cooling equipment to ensure the safety or health of the driver or passengers," *id.*;

- Idling in excess of three minutes "is necessary to operate auxiliary equipment that is in or on the mobile source to accomplish the intended use of the mobile source," *id.*;

- Idling in excess of three minutes is necessary "to bring the mobile source to the manufacturer's recommended operating temperature," *id.*;

- The outdoor temperature is below twenty degrees Fahrenheit, *id.*;

- The vehicle is undergoing maintenance that requires its operation in excess of three minutes, *id.*; or

- The vehicle "is in queue to be inspected by U.S. military personnel prior to gaining access to a U.S. military installation," *id.*

22.     The Connecticut Anti-Idling Regulation exempts aircraft, trains, boats, commonly used residential garden and snow removal equipment, antique vehicles, racing vehicles, and vehicles undergoing mechanical repair or testing that affects the emission of visible air pollutants. Regs. Conn. State Agencies § 22a-174-18(j)(4).

23.     Defendant has violated and is in violation of the Anti-Idling Regulation.

24.     The Act's citizen suit provision provides the district courts of the United States with jurisdiction to "enforce" emission standards and limitations under the Act, and to impose an appropriate civil penalty on the violator of those emissions standards and limitations. 42 U.S.C. § 7604(a).

## PARTIES

*Conservation Law Foundation, Inc.*

25.     CLF is a nonprofit, member-supported organization dedicated to protecting New England's environment. CLF's mission includes safeguarding the health and quality of life of New England communities facing the adverse effects of air pollution.

26.     CLF is incorporated under the laws of Massachusetts with a principal place of business at 62 Summer Street in Boston, Massachusetts.

27.     As a corporation, CLF is a person as defined by the Clean Air Act. 42 U.S.C. § 7602(e).

28.     CLF has over 5,100 members in New England.

29.     CLF's members include individuals who live and recreate near the locations where vehicles owned, operated, and/or managed by First Transit idle in excess of three minutes.

30.     The health, well-being, quality of life, and enjoyment of CLF members are harmed by Defendant's violations of the CAA.

*First Transit, Inc.*

31.     First Transit is a corporation organized under the laws of the state of Delaware.

32.     First Transit is headquartered at 600 Vine Street, Suite 1400, Cincinnati, Ohio 45202.

33.     First Transit provides transportation services using vehicles it owns and/or operates.

34.     First Transit operates a fleet of about 12,000 vehicles and employs approximately 19,000 employees.

35.     First Transit operates in 335 locations and carries over 350 million passengers each year in 39 states, as well Puerto Rico and Canada.

36.     First Transit conducts business within the state of Connecticut.

37.     First Transit operates the Hartford, New Haven, and Stamford divisions of CTtransit in Connecticut.

38.     First Transit operates fixed-route campus shuttle services for students and staff of Yale University in New Haven, Connecticut.

39.     As a corporation, First Transit is defined as a "person" by the Clean Air Act. 42 U.S.C. § 7602(e).

## JURISDICTION, VENUE, AND NOTICE

40.     Subject matter jurisdiction is conferred upon this Court by 42 U.S.C. § 7604(a) (CAA citizen suit jurisdictional provision) and 28 U.S.C. § 1331 (federal question jurisdiction).

41.     This Court has personal jurisdiction over Defendant, as First Transit conducts business in the State of Connecticut and a substantial part of the acts or omissions giving rise to the claims in this case occurred within the state.

42.     The Court can grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and the jurisdiction conferred on the Court by the Clean Air Act. 42 U.S.C. § 7604(a).

43.     The Court can impose civil penalties pursuant to the Clean Air Act. *Id.*

44.     An actual, justiciable controversy now exists between CLF and the Defendant. U.S. CONST. art. III, § 2.

45.     Venue is proper in this Court, as Defendant First Transit conducts business in the District of Connecticut and a substantial part of the acts or omissions giving rise to the claims in this case occurred in the District. 28 U.S.C. § 1391(b).

46.     CLF has satisfied the Clean Air Act's notice requirement. 42 U.S.C. § 7604(b).

47.     More than 60 days prior to the filing of this complaint, CLF provided notice of the violations alleged in this Complaint to First Transit by a letter dated January 24, 2022 and mailed to Brad Thomas, First Transit's President (the "Notice Letter"). A copy of CLF's Notice Letter is attached as Exhibit 1.

48.     CLF also mailed the Notice Letter to First Transit's agent, CT Corporation System.

49.     Copies of the Notice Letter were also mailed to the Administrator of the United States Environmental Protection Agency ("EPA"), the Connecticut Department of Energy and Environmental Protection ("DEEP") Commissioner, and the EPA Citizen Suit Coordinator.

50.     Neither EPA nor DEEP has brought suit against Defendant in connection with the violations described in CLF's notice letter.

51.     Each of the addressees identified above received the Notice Letter. A copy of each return receipt is attached as Exhibit 2.

## **FACTUAL BACKGROUND**

*The Harms of Vehicle Idling*

52.     When operating, an internal combustion engine generates exhaust as a waste byproduct of combustion.

53.     Exhaust is routed out of the combustion chamber, through the vehicle's exhaust system, and out the vehicle's tailpipe to the environment.

54.     Catalytic converters or filters can lower the concentrations of pollutants in raw exhaust before release to the environment—albeit without fully eliminating pollution.

55.     Exhaust can also leak from the combustion chamber into the crankcase, from which it can reach the surrounding environment.

56.     "Self-pollution," exhaust generated by a bus's engine that enters the bus cabin, is a serious source of harm caused by bus fleets.

57.     Exposure to vehicle exhaust is harmful to human health.

58.     The link between diesel-exhaust exposure and cancer is well established.

59.     Both diesel-fueled vehicles and vehicles that use ethanol, propane, and compressed natural gas fuels emit harmful air pollutants like particulate matter, nitrogen oxides, sulfur dioxide, benzene, and formaldehyde.

60.     Fine particulate matter is a pollutant in vehicle exhaust.

61.     Fine particulate matter— often referred to as "$PM_{2.5}$"—refers to a mixture of solid particles and liquid droplets with diameters generally 2.5 micrometers and smaller.

62.     When inhaled, fine particulate matter can penetrate deep into the lungs.

63.     The smallest particles—referred to as ultrafine particles—are composed of nanoparticles that can penetrate the air-blood barrier in the lungs and, in turn, enter the lymph nodes and bloodstream.

64.     Diesel exhaust contains both fine and ultrafine (nano) particulate matter.

65.     Fine particulate matter is harmful to human health.

66.     Scientific studies have linked exposure to fine particulate matter pollution with health problems including irritation of the airways, coughing or difficulty breathing, aggravated asthma, decreased lung function, cardiovascular disease, irregular heartbeat, heart attacks, and premature death.

67.     Studies have linked exposure to fine particulate matter pollution to decreased cognitive function in children, dementia in elderly persons, and reduced economic growth and a higher incidence of violent crime at the societal level.

68.     Fine particulate matter pollution is particularly harmful to children.

69.     A child's developing lungs are structurally different from, and more permeable than, mature adult lungs and allow for a higher portion of the inhaled pollutant load—particularly of the most harmful ultrafine nanoparticles—to deposit in the lungs and penetrate the air-blood barrier.

70.     Fine particulate matter pollution is particularly harmful to older adults.

71.     According to a recent study by the Health Effects Institute, older Americans who regularly breathe even low levels of particulate air pollution, including from automobile exhaust, face a greater chance of premature death.

72.     Fine particulate matter is harmful to the environment.

73.     Particulate matter settles on the surface of waterbodies, where it can make them more acidic and change their nutrient balance.

74.     On land, particulate matter can deplete the nutrients in soil, damage sensitive forests and farm crops, and detrimentally affect the biodiversity of ecosystems.

75.     Vehicle exhaust contains nitrogen oxides ($NO_x$), a family of poisonous, highly reactive gases formed when fuel is burned at high temperatures.

76.     Nitrogen oxide compounds are harmful to human health.

77.     Nitrogen oxide compounds react with other compounds in the atmosphere to form particulate matter.

78.     Nitrogen oxide compounds are harmful to the environment.

79.     Together with sulfur dioxide, nitrogen oxides are the main air pollutants that cause acid rain.

80.     Atmospheric nitrogen deposition is the process in which nitrogen particles, such as nitrogen oxide compounds emitted from a tailpipe, travel through the atmosphere and are deposited on land or in water.

81.     Atmospheric nitrogen deposition can increase nitrate concentrations in water.

82.     High levels of nitrate in drinking water are a health hazard, especially for infants.

83.     Through atmospheric nitrogen deposition, nitrogen oxide pollution contributes to widespread accelerated eutrophication (the generation of algal blooms and fish kills as a result of excess nutrients) in coastal waters and estuaries.

84.     Nitrogen oxides can contribute to anthropogenic climate change.

85.     Some nitrogen oxides are themselves greenhouses gases, while others contribute to the creation of tropospheric ozone (as opposed to stratospheric ozone), which is a greenhouse gas.

86.     Vehicle exhaust contains sulfur dioxide, a gas that is harmful to human health. Short-term exposures to sulfur dioxide can harm the human respiratory system and impair breathing. People with asthma, particularly children, are sensitive to these effects.

87.     Sulfur dioxide is also otherwise harmful to the environment. At high concentrations, it can harm trees and plants by damaging foliage and decreasing growth.

88.     Exhaust also contains benzene, an industrial solvent and a component in gasoline.

89.     Benzene is harmful to human health.

90.     Exposure by inhalation can cause drowsiness, dizziness, and headaches, as well as eye, skin, and respiratory tract irritation, and, at high levels, unconsciousness.

91.     Benzene is also a known human carcinogen.

92.     An extensive array of scientific literature describes the genotoxic effects of benzene, confirming it as a chemical that damages the DNA of a person exposed to it.

93.     Exhaust also contains formaldehyde, a gas that is harmful to human health.

94.     Exposure to formaldehyde can cause nasal and eye irritation and increased risk of asthma, and, at higher concentrations, eczema and impaired lung function.

95.     According to the United States Department of Health and Human Services' National Toxicology Program, formaldehyde is a known human carcinogen.

*Negative Health Effects of COVID-19 on Communities Exposed to Exhaust*

96.     The pollutants which comprise vehicle exhaust have been linked with worse health effects from COVID-19.

97.     Particulate air pollution can facilitate the spread of COVID-19 infection, as the virus can travel further through the air and deeper into the lungs while "hitchhiking" on airborne particulates.

98.     Particulate air pollution can make people more susceptible to COVID-19 infection and its most severe symptoms by causing or contributing to lung inflammation and chronic lung diseases.

99.     Studies have shown that a small increase in long-term exposure to fine particulates leads to a large increase in the COVID-19 death rate.

100.    Studies have linked exposure to high concentrations of $NO_x$ to deaths from COVID-19.

*Defendant's Violations of the Anti-Idling Regulation*

101.    First Transit owns, operates, and/or manages vehicles in Connecticut, including diesel-fueled vehicles.

102.    Vehicles owned, operated, and/or managed by First Transit—including their diesel-fueled buses—use internal combustion engines.

103.    Idling refers to the operation of a vehicle's engine while the vehicle is not moving.

104.    During idling, combustion occurs in a vehicle's engine and generates exhaust.

105.    While Defendant's vehicles are operating, their engines generate and release exhaust into the surrounding environment.

106.    The exhaust generated by Defendant's vehicles while idling contains fine (and ultrafine) particulate matter, nitrogen oxide compounds, sulfur dioxide, benzene, formaldehyde, and other air contaminants.

107.    Defendant causes, suffers, allows, and/or permits the emission of fine (and ultrafine) particulate matter, nitrogen oxide compounds, sulfur dioxide, benzene, formaldehyde, and other air contaminants into the atmosphere at the New Haven Go Bus Stop located at 40 Union Avenue, New Haven, Connecticut 06519 ("New Haven Go Bus Stop").

108.    According to 2020 Decennial Census data, approximately 116,206 people live within two (2) miles of the New Haven Go Bus Stop.

109.    Amistad Park, Tower Lane Public Housing Playground, Yale New Haven Psychiatric Hospital, Cornell Scott Hill Health Center (Sargent Drive), Afamistad High School, South Orange Public Housing Playground, St. Basil's Greek Orthodox Church, Yale School of Public Health, Wooster Square Community Garden, Wooster Memorial Playground, Union Street Dog Park, Columbus Park, Trowbridge Square Park, Boys and Girls Club of New Haven, Liberty

Street Farm, and Roberto Clemente Elementary School are located within a half (0.5) mile of New Haven Go Bus Stop.

110.    Yale University, Grove Street Cemetery, New Haven Green, St. Mary's Church, Wooster Square Park, Conte West Hills Middle School, Yale-New Haven Health, Yale-New Haven Hospital, Yale School of Medicine, Long Wharf Park, Paul Russo Memorial Park, and Hyde Leadership School are located within one (1) mile of New Haven Go Bus Stop.

111.    Notre Dame High School, University of New Haven, East Rock Park, Evergreen Cemetery, and The Foote School are located within two (2) miles of New Haven Go Bus Stop.

112.    Defendant causes, suffers, allows, and/or permits the emission of fine (and ultrafine) particulate matter, nitrogen oxide compounds, sulfur dioxide, benzene, formaldehyde, and other air contaminants into the atmosphere at the Yale School of Medicine Shuttle Stop located at 333 Cedar Street in New Haven, Connecticut, 06519.

113.    According to 2020 Decennial Census data, approximately 121,644 people live within two (2) miles of the Yale School of Medicine Shuttle Stop.

114.    Amistad Park, Tower Lane Public Housing Playground, Yale New Haven Psychiatric Hospital, Cornell Scott Hill Health Center (Columbus Ave), Afamistad High School, South Orange Public Housing Playground, St. Basil's Greek Orthodox Church, Yale-New Haven Health, Yale-New Haven Hospital, Yale-New Haven Children's Hospital, Yale School of Medicine, Yale School of Public Health, Columbus Park, Trowbridge Square Park, Boys and Girls Club of New Haven, Liberty Street Farm, Stevens Street Community Garden, Hallock Street Playground, Clemente Leadership Academy, and Roberto Clemente Elementary School are located within a half (0.5) mile of the Yale School of Medicine Shuttle Stop.

13

115.    Evergreen Cemetery, West River Memorial Park, Yale-New Haven Hospital Saint Raphael Campus, Troup School, Church of God and Saints of Christ, Amistad Academy Middle School, Dwight Gardens, Scantlebury Park, Yale University, Grove Street Cemetery, New Haven Green, St. Mary's Church, Wooster Square Park, Conte West Hills Middle School, and Orchard Street Shul are located within one (1) mile of the Yale School of Medicine Shuttle Stop.

116.    Notre Dame High School, University of New Haven, East Rock Park, Forest School, Albertus Magnus College, and The Foote School are located within two (2) miles of the Yale School of Medicine Shuttle Stop.

117.    The New Haven Go Bus Stop and the Yale School of Medicine Shuttle Stop are located within the City of New Haven, an environmental justice community[1] in which 32.6% of residents identify as Black or African American, 31.2% of residents identify as Hispanic or Latino, 35.9% of the population speaks a language other than English at home, and 26.5% of residents live in poverty according to the U.S. Census Bureau QuickFacts.

118.    Defendant causes, suffers, allows, and/or permits the emission of fine (and ultrafine) particulate matter, nitrogen oxide compounds, sulfur dioxide, benzene, formaldehyde, and other air contaminants into the atmosphere at the Wolcott Hill Park and Ride located at 38 Wolcott Hill Road, Wethersfield, Connecticut 06109.

119.    According to 2020 Decennial Census data, approximately 67,511 people live within two (2) miles of the Wolcott Hill Park and Ride.

---

[1] Connecticut defines "environmental justice community" as either "A. a United States census block group, as determined in accordance with the most recent United States census, for which thirty percent or more of the population consists of low income persons who are not institutionalized and have an income below two hundred percent of the federal poverty level, or B. a distressed municipality." Conn. Gen. Stat. § 22a-20a (2009). New Haven is a census block group in which thirty percent or more of the population lives below two hundred percent of the federal poverty level.

14

120.    Wethersfield Academy, Folly Brook Natural Area, Ukrainian National Home auditorium, Connecticut Department of Correction, Pentecostals of Greater Hartford, Naylor School, Connecticut Department of Labor, Discovery Academy, and Franklin Avenue Recreation Center are located within a half (0.5) mile of Wolcott Hill Road Park and Ride.

121.    Wethersfield Community Center, Charles Wright Elementary School, Double A Veterinary Hospital, Beaver Brook Animal Hospital, the Wethersfield Public Library, Cedar Hill Cemetery, Bosnian-American Islamic Cultural Center, Trinity Pentecostal Church of God, Grace Worship Center Church, Folly Brook Natural Area, Wethersfield Cove, Goodwin Park Golf Course, and Cove Park are located within one (1) mile of Wolcott Hill Road Park and Ride.

122.    Keeny Point National Wildlife Refuge, Wethersfield Village Cemetery, Wethersfield High School, Silas Deane Middle School, Emerson Williams Elementary School, Farms Village Playground, Kol Haverim Cemetery, Wethersfield Salem Seventh-Day Adventist Church, and Forster Heights Playground are located within two (2) miles of Wolcott Hill Road Park and Ride.

123.    The Wolcott Hill Park and Ride is located within the Town of Wethersfield, an environmental justice community in which thirty percent or more of the population lives below 200% of the federal poverty level.

124.    Asthma rates in Connecticut are significantly higher than national averages: 10.3% of adults and 9.7% of children in Connecticut currently suffer from asthma compared to 7.6% of adults and 7.5% of children nationwide.

125.    Rates of asthma are particularly high among children in low-income households: over 18% of children in households earning less than $25,000 per year have asthma, according to Connecticut's most recent data.

126.    New Haven is among the top twenty "asthma capitals" in the United States based on the

prevalence of asthma, asthma-related emergency room visits, and deaths due to asthma.

### DEFENDANT'S VIOLATIONS OF THE CLEAN AIR ACT

127.    On the dates listed below in separate paragraphs, an investigator observed vehicles

owned, operated, and/or managed by First Transit idling in excess of three minutes for the

following amounts of time:

| Paragraph Number | Date | Location of Vehicle | Idling Start Time | Idling End Time | Duration of Idling (mins) | Excess Idling (min) |
|---|---|---|---|---|---|---|
| 127a. | 11/19/2019 | New Haven Go Bus Stop | 9:24 AM | 9:29 AM | 5 min | 2 min |
| 127b. | 11/19/2019 | New Haven Go Bus Stop | 9:37 AM | 9:45 AM | 8 min | 5 min |
| 127c. | 11/19/2019 | New Haven Go Bus Stop | 9:55 AM | 10:02 AM | 7 min | 4 min |
| 127d. | 11/19/2019 | New Haven Go Bus Stop | 10:03 AM | 10:15 AM | 12 min | 9 min |
| 127e. | 11/19/2019 | New Haven Go Bus Stop | 10:36 AM | 10:40 AM | 4 min | 1 min |
| 127f. | 11/19/2019 | New Haven Go Bus Stop | 11:25 AM | 11:30 AM | 5 min | 2 min |
| 127g. | 11/21/2019 | New Haven Go Bus Stop | 9:16 AM | 9:20 AM | 4 min | 1 min |
| 127h. | 9/29/2020 | Wolcott Hill Park and Ride | 6:54 AM | 7:05 AM | 11 min | 1 min |
| 127i. | 9/29/2020 | Wolcott Hill Park and Ride | 7:03 AM | 7:08 AM | 5 min | 2 min |
| 127j. | 9/29/2020 | Wolcott Hill Park and Ride | 7:11 AM | 7:30 AM | 19 min | 16 min |
| 127k. | 9/29/2020 | Wolcott Hill Park and Ride | 7:20 AM | 7:34 AM | 14 min | 11 min |
| 127l. | 9/29/2020 | Wolcott Hill Park and Ride | 7:39 AM | 7:45 AM | 6 min | 3 min |
| 127m. | 9/29/2020 | Wolcott Hill Park and Ride | 7:50 AM | 8:05 AM | 15 min | 12 min |
| 127n. | 9/29/2020 | Wolcott Hill Park and Ride | 7:52 AM | 8:12 AM | 15 min | 12 min |
| 127o. | 9/29/2020 | Wolcott Hill Park and Ride | 8:16 AM | 8:25 AM | 9 min | 6 min |

| 127p. | 9/29/2020 | Wolcott Hill Park and Ride | 8:24 AM | 8:34 AM | 10 min | 7 min |
|---|---|---|---|---|---|---|
| 127q. | 10/14/2020 | Wolcott Hill Park and Ride | 8:30 AM | 8:41 AM | 11 min | 8 min |
| 127r. | 10/14/2020 | Wolcott Hill Park and Ride | 8:49 AM | 9:09 AM | 20 min | 17 min |
| 127s. | 10/14/2020 | Wolcott Hill Park and Ride | 8:50 AM | 9:09 AM | 19 min | 16 min |
| 127t. | 10/14/2020 | Wolcott Hill Park and Ride | 9:09 AM | 9:25 AM | 16 min | 13 min |
| 127u. | 10/14/2020 | Wolcott Hill Park and Ride | 6:16 AM | 6:23 AM | 7 min | 4 min |
| 127v. | 10/14/2020 | Wolcott Hill Park and Ride | 6:31 AM | 6:36 AM | 5 min | 2 min |
| 127w. | 10/14/2020 | Wolcott Hill Park and Ride | 6:52 AM | 7:09 AM | 17 min | 14 min |
| 127x. | 10/14/2020 | Wolcott Hill Park and Ride | 7:18 AM | 7:29 AM | 11 min | 8 min |
| 127y. | 10/14/2020 | Wolcott Hill Park and Ride | 7:54 AM | 8:05 AM | 11 min | 8 min |
| 127z. | 10/14/2020 | Wolcott Hill Park and Ride | 9:26 PM | 9:40 PM | 14 min | 11 min |
| 127aa. | 10/14/2020 | Wolcott Hill Park and Ride | 10:39 PM | 10:48 PM | 9 min | 6 min |
| 127ab. | 10/14/2020 | New Haven Go Bus Stop | 2:26 AM | 2:30 AM | 4 min | 1 min |
| 127ac. | 10/14/2020 | New Haven Go Bus Stop | 2:51 AM | 2:59 AM | 8 min | 5 min |
| 127ad. | 10/14/2020 | New Haven Go Bus Stop | 4:24 AM | 4:30 AM | 6 min | 3 min |
| 127ae. | 10/15/2020 | Wolcott Hill Park and Ride | 6:18 AM | 6:23 AM | 5 min | 2 min |
| 127af. | 10/15/2020 | Wolcott Hill Park and Ride | 6:29 AM | 6:37 AM | 8 min | 5 min |
| 127ag. | 10/15/2020 | Wolcott Hill Park and Ride | 7:52 AM | 8:05 AM | 13 min | 10 min |
| 127ah. | 10/15/2020 | Wolcott Hill Park and Ride | 9:13 AM | 9:17 AM | 4 min | 1 min |
| 127ai. | 10/15/2020 | Wolcott Hill Park and Ride | 9:27 AM | 9:35 AM | 8 min | 5 min |
| 127aj. | 10/15/2020 | Wolcott Hill Park and Ride | 10:41 AM | 10:47 AM | 6 min | 3 min |
| 127ak. | 10/15/2020 | Wolcott Hill Park and Ride | 12:00 PM | 12:04 PM | 4 min | 1 min |
| 127al. | 10/15/2020 | New Haven Go Bus Stop | 2:26 PM | 2:30 PM | 4 min | 3 min |

| 127am. | 10/15/2020 | New Haven Go Bus Stop | 3:52 PM | 4:03 PM | 11 min | 8 min |
|---|---|---|---|---|---|---|
| 127an. | 10/18/2021 | Wolcott Hill Park and Ride | 7:01 AM | 7:08 AM | 7 min | 4 min |
| 127ao. | 10/18/2021 | Wolcott Hill Park and Ride | 7:52 AM | 8:27 AM | 35 min | 32 min |
| 127ap. | 10/18/2021 | Wolcott Hill Park and Ride | 8:41 AM | 8:48 AM | 7 min | 4 min |
| 127aq. | 10/18/2021 | Wolcott Hill Park and Ride | 9:40 AM | 9:45 AM | 5 min | 2 min |
| 127ar. | 10/18/2021 | Wolcott Hill Park and Ride | 9:51 AM | 10:02 AM | 11 min | 8 min |
| 127as. | 10/18/2021 | Wolcott Hill Park and Ride | 11:34 AM | 11:46 AM | 12 min | 9 min |
| 127at. | 10/20/2021 | Wolcott Hill Park and Ride | 9:52 AM | 10:02 AM | 10 min | 7 min |
| 127au. | 10/20/2021 | Wolcott Hill Park and Ride | 10:26 AM | 10:33 AM | 7 min | 4 min |
| 127av. | 10/20/2021 | Wolcott Hill Park and Ride | 11:32 AM | 11:45 AM | 13 min | 10 min |
| 127aw. | 10/20/2021 | Wolcott Hill Park and Ride | 1:10 PM | 1:15 PM | 5 min | 2 min |
| 127ax. | 11/8/2021 | Yale School of Medicine Shuttle Stop | 1:15 PM | 1:21 PM | 6 min | 3 min |
| 127ay. | 11/8/2021 | Yale School of Medicine Shuttle Stop | 1:21 PM | 1:28 PM | 7 min | 4 min |
| 127az. | 1/11/2022 | Yale School of Medicine Shuttle Stop | 12:50 PM | 12:56 PM | 6 min | 3 min |
| 127ba. | 1/11/2022 | Yale School of Medicine Shuttle Stop | 12:51 PM | 12:56 PM | 5 min | 5 min |

128.   On information and belief, further investigation will indicate that the instances of idling

documented by CLF are representative of Defendant's normal practices and operations and

therefore evidence a broader pattern and practice of idling over the last five years.

129.   After reasonable opportunity for further investigation and discovery, CLF likely will be

able to prove that Defendant idled motor vehicles unnecessarily and in excess of the limit set by

the Connecticut Anti-Idling Regulation at these lots and others numerous additional times over the last five years.

## PLAINTIFF AND ITS MEMBERS ARE HARMED BY DEFENDANTS' CLEAN AIR ACT VIOLATIONS

130.    CLF's members live, rent, own property, study, attend school, use transit, and/or spend time shopping, recreating, and conducting activities near the lots in which Defendant has caused and/or allowed the unlawful idling described above and the emission of exhaust during that idling. CLF's members seek to continue to use areas in the neighborhood of and around the Defendant's lots for these and other purposes.

131.    CLF's members reside in and around New Haven, Connecticut, and Wethersfield, Connecticut.

132.    The ambient air in New Haven and Wethersfield fails to meet the federal, health-based limit for ozone.

133.    CLF's members inhale and are otherwise exposed to the pollutants emitted by vehicles that Defendant unlawfully causes and/or allows to idle in excess of the regulatory maximum.

134.    CLF's members can see air pollution coming from vehicles owned, operated, managed, and/or overseen by Defendant.

135.    CLF's members who live near and spend time at the parks, playgrounds, places of worship, cultural centers, transit stations, hospitals, and/or educational institutions near the locations where vehicles owned, operated, managed, and/or overseen by Defendant were observed idling have asthma, experience trouble breathing, and/or suffer from other respiratory symptoms.

136.    CLF's members are reasonably concerned about inhaling carcinogens and other pollutants emitted by vehicles owned, operated, managed, and/or overseen by Defendant.

137.    CLF's members want to breathe as little air pollution from vehicles owned, operated, managed, and/or overseen by Defendant as possible.

138.    CLF's members are reasonably concerned that pollutants released from vehicles that Defendant has unlawfully caused and/or allowed to idle in excess of the regulatory maximum have harmed, continue to harm and threaten, and will harm and threaten their health, well-being, quality of life, and enjoyment, as well as those of their families.

139.    The greater the exposure to particulate matter, nitrogen oxides, sulfur dioxide, benzene, and formaldehyde, and the higher the levels of exposure, the more health and well-being are compromised.

140.    CLF's members' abilities to live, raise their families, work, recreate, and conduct educational, cultural, religious, and other activities in the neighborhood of and around the bus stops in which Defendant causes and/or allows unlawful idling in excess of the regulatory maximum have been impaired, harmed, limited, and/or prevented by Defendant's unlawful acts and omissions.

141.    The actual and threatened harm to CLF's members would be redressed by a declaration, injunction, civil penalty, and other relief that prevents or deters future violations of the Act and the Connecticut Anti-Idling Regulation by Defendant, and that requires Defendant to offset its pollution from these violations by reducing its pollution, or otherwise remediating harm that has already been caused to Plaintiff's members and their local communities.

## COUNT ONE

### Violation of the Clean Air Act and Connecticut State Implementation Plan

142.    CLF incorporates the allegations contained in the above paragraphs as though fully set forth herein.

143.    The Connecticut Anti-Idling Regulation at Regs., Conn. State Agencies § 22a-174-18(b)(3)(C) prohibits causing and/or allowing "the unnecessary operation of a mobile source for more than three (3) consecutive minutes when such mobile source is not in motion."

144.    A bus is defined as a "mobile source" under Regs., Conn. State Agencies § 22a-174-1(72).

145.    On at least fifty-three (53) occasions during November of 2019, September and October of 2020, October and November of 2021, and January of 2022, Defendant First Transit caused and/or allowed mobile sources to operate unnecessarily for more than three consecutive minutes when such mobile sources were not in motion.

146.    Defendant continues to cause and/or allow the unnecessary operation of mobile sources for more than three consecutive minutes when such mobile sources are not in motion.

147.    In none of these instances do any of the exceptions listed in Regulations of Connecticut State Agencies § 22a-174-18(b) or (i) apply.

148.    Therefore, Defendant has violated and continues to violate the Connecticut State Implementation Plan and the Clean Air Act numerous times over the past five years.

149.    Pursuant to section 113(b) of the Act, 42 U.S.C. § 7413(e); 42 U.S.C. §§ 7604(a), 7604(g); and 40 C.F.R. §§ 19.2, 19.4, Defendant is liable for a civil penalty of up to $101,439 per day for each violation that occurred after November 2, 2015, where penalties are assessed on or after January 13, 2020.

## **REQUESTED RELIEF**

CLF respectfully requests that this Court declare that Defendant has caused and/or allowed, and continues to cause and/or allow, motor vehicles to operate unnecessarily while those vehicles were not in motion in excess of three minutes. In so doing, Defendant has

endangered and continues to endanger the health and welfare of CLF members and the
environment. Defendant has violated, and continues to violate, the Connecticut State
Implementation Plan and the Clean Air Act.

CLF requests that the Court issue an order that:

(a)   Permanently enjoins Defendant from causing and/or allowing the idling of any
       motor vehicle in violation of Regulations of Connecticut State Agencies Section
       22a-174-18(b)(3)(C) and the Clean Air Act;

(b)   Orders Defendant to comply fully and immediately with Regulations of
       Connecticut State Agencies Section 22a-174-18(b)(3)(C) and the Clean Air Act;

(c)   Orders Defendant to pay civil penalties of $101,439 per day per violation for all
       violations of the Clean Air Act that occurred after November 2, 2015 and that are
       assessed on or after January 13, 2020;

(d)   Orders Defendant to take appropriate actions to remedy harm caused by
       Defendant's noncompliance with the Clean Air Act and Connecticut State
       Implementation Plan;

(e)   Awards CLF costs (including reasonable investigative, attorney, witness, and
       consultant fees) as permitted by Section 304(d) of the Clean Air Act. 42 U.S.C.
       § 7406(d); and

(f)   Awards any such other and further relief as the Court deems just and appropriate.


Respectfully submitted this 28th day of March 2022,

CONSERVATION LAW FOUNDATION, INC.,

By its attorney,

*/s/ Shannon Laun*

Shannon Laun, Esq. (ct31138)
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
(475) 261-9538
slaun@clf.org

Heather A. Govern, Esq.
Erica Kyzmir-McKeon, Esq.
*Pro hac vice motions to be filed*
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
(617) 850-1765
hgovern@clf.org